ALESANA and SUIANOA, Plaintiffs

v.

SIUPOLU (Mrs. Ross), Defendant

No. 16-1919

High Court of American Samoa

Civil Jurisdiction, Trial Division

Land: "Toaga" [in Ofu, Manu'a]

December 13, 1922

SYDNEY D. HALL, *President*; and LUTU, *Associate Member*

OPINION

This cause coming on to be heard is an action to try title to a piece of property on the south side of the island of Ofu designated by the name "Toaga", being the result of an attempt of Siupolu, otherwise known as Mrs. A. J. Ross, to register title to this land. Upon the posting of notice of her intention objections were filed in the year 1920 by Faoa, Mauia and Sunia, in one action, which two actions were joined when the case was brought to trial.

Soon after the trial started the parties of the first named action withdrew their objections.

There remained then the action between *Alesana and Suianoa v. Siupolu* and the trial proceeded.

A person to possess property must have some valid claim to the property. The claim of the Defendant, Siupolu, to title in this property was based on her relationship to a so-called previous occupant—and also on the fact that she, by agent, at least, had been using the property. This claim based on relationship was the result of a so-called descent from the name Tuiofu.

Tuiofu was a County Chief of Ofu. This is conceded by all parties to this action.

346

Now, how did Siupolu derive a so-called right and claim based on descent from Tuiofu and what does the testimony of the Defendant and the Defendant's witnesses show?

They state in their testimony that the land was handed down from Tuiofu to Tauvao and in accordance with the testimony of Lepepa, one of the witnesses for the Defendant, the descent of Tauvao was in this manner; from Tuiofu to Sua Galuvae and down through the Sua's to whom they claim to be Sua-Tauvao.

The Court will state here that Tuiofu and the Sua's to Sua Tauvao were chiefs of Ofu, County Chiefs, or District Chiefs, and that this so-called Sua Tauvao was not made a Faatui of the Faalupega but married a Tau woman and removed to Tau where he lived.

Bear in mind that this had been held up to this time by the Faatui of the Faalupega and had descended from Faatui to Faatui.

Their testimony then disclosed that there was a son born who was Alalamua and later became Tuimanua and with the birthright from Tauvao also came the right to possession of the land "Toaga", and then the claim or the right descended on down through the Tuimanua's to Siupolu. The last Tuimanua being Tuimanua-Elisala, and Siupolu being the daughter of the last Tuimanua.

Now then we will take up the matter of occupation of this land. It is generally conceded that Tuimanua-Elisala occupied this land; that he planted coconuts on this land and perhaps may have planted other things on this land. It is claimed that Tuimanua Alalamua occupied this land. It is a fact that Siupolu, daughter of Tuimanua-Elisala, occupied this land by agent and cultivated it.

The Court will now take up the Plaintiff's side in this action and the testimony that was produced bearing on these two points. A claim based on relationship and on occupation.

347.

In the first place, let us establish the relationship of the Plaintiffs to anyone who might have authority over this land. What family did they belong to? It is conceded that they belonged to the family of Misa.

Who was Misa?

Misa is today known as County Chief of Ofu. In days gone by he would be known as the Faatui of the Faalupega.

From what descent do they claim their title? Down through the direct line of Faatui of the Faalupega, from Tuiofu to the Sua's, from the Sua's to the Misa's, and they belonging to that family base their claim on that relationship.

Bear in mind that this land vested in the Faatui of the Faalupega to the time of Sua-Tauvao, as he is designated by the Defendant and her witnesses, or Tauvao, a young man, as he is designated by the Plaintiffs and their witnesses. The testimony of the two contesting sides in this action differs as to whether this Tauvao was a Sua or not, or whether he was a "matai" or not. The Defendant stating that he was Sua and the Plaintiff stating that he was a young man and never bore a "matai" name. We have no conclusive evidence to prove which side is right in this matter. We merely have what has been handed down by word of mouth from generation to generation.

The question naturally arises in the minds of the Court "What happened to take this piece of land away from the line of descent which vested it in the Faatui of the Faalupega, and vest the title in a person who was not a Faatui (as has been testified to by all) and who went to Tau, married and lived there?"

What thing had happened to deprive the Faatui of the Faalupega, or as we would term him, the County Chief, of his title to the land? There was a Sua living and the Faatui of the Faalupega was still descending through the name Sua. The Defendant claims this is what happened, that the

land passed from the possession of the County Chief or Faatui to a person who was not a County Chief. All this in spite of the fact that it had for generations rested in the Faatui.

Now if that happened then the ancestors of Siupolu to the time of Sua Tauvao must have rested secure in the possession of this land and therefore there would have been no dispute as regards the matter. If there was a dispute it must have been a minor one, because of the position that these people held in Manua.

The Plaintiffs and the Witnesses for the Plaintiffs testify that that is not what happened up to a certain time and they testify that things did happen that never should have happened at all. They testify that the title to this land descended from Tuiofu down through the Sua's up to the time that Tuimanua sought and apparently did obtain possession of this land.

What happened according to the testimony developed in this action? It has been testified to that Tuimanua Alala-mua occupied this land. This is disputed.

It has further been testified that Tuimanua-Elisala occupied this land, and this statement has been agreed to by both sides.

In connection with the occupation of this land by Tuimanua-Elisala, both sides, testify that Tuimanua-Eli-sala went to the Faletolu and asked the Faletolu and other people who were assembled at the same time, words to this effect: "Do you object to my possession of the land Toaga?" Bear in mind that he was Tuimanua. That testimony is absolutely sworn to by both sides. Why should he have had to do this if the title was absolutely secure in Sua-Tauvao, in Alalamua and in Elisala who became Tuimanua.

If the title was secure in Tuimanua-Elisala would there ever have been any question like that necessitated?

Would it have been necessary for him to have gone over to Olosega and there raise the same question again? And there, furthermore, have met objections in connection with this proposition on the part of two people.

Why should it have been necessary for him to go on further to the island of Ofu—practically cover the whole of the Manua Group—and put this same question up to the chiefs and the people of these various places? Remember, it is the King of Manua who is doing this.

The Court is compelled to take notice of all these things in arriving at its decision and it is essential that the Court speak these words to the people of Samoa in letting them know how it has arrived at the decision that it will announce shortly.

Were these things the actions of a man that possessed title or were they the actions of a man seeking title to this land?

The testimony further develops and it is conceded by all that Tuimanua Elisala occupied this land, but it shows that before he did occupy this land, or as he was in the act of occupying it, he put this question "Do you object to my title in this land" or words to that effect, to the chiefs and people of Ofu, Olosega, and Tau as well as the Faletolu.

Another question was raised in connection with Tuimanua-Elisala which the Court is compelled to go into.

The scheme of things in American Samoa are to the mind of the Court based on the old patriarchal system as described in the Bible and described in books of ancient history, several families operating under one head and operating as a unit. The head of the family is termed a "matai". Possession of property and trusteeship over property passes down from "matai" to "matai". When a "matai" dies he is succeeded by a "matai" who acquires the "Matai" name and also the trusteeship and paternal supervision

over the members of the family and the properties that are involved.

Is Tuimanua a "matai" name? No, it is a political name the same as Faatui.

It must have been a political name, because if it was not it meant that the King of Manua possessed—Manua, and that is not so, as we all know. The same as the expression "King of England" means nothing but the name of a position. "King George" is another proposition, referring to the King himself. So, in acquiring the name "Tuimanua" property did not pass because there was no property vested in that political name at all, property would pass by "matai" names.

Was Elisala a "Matai"? Testimony disclosed that he was not. He was given the name Tui at his birth and later on when he became a missionary took the name Elisala. That he belonged to the family of Alalamua is conceded and the property of the Alalamua family would vest in the "matai" Alalamua, whoever he was. If there was no Alalamua at the time Elisala was Tuimanua undoubtably because of the relationship he bore to Alalamua he exercised the trusteeship over these lands but the fact remains that he never held a "matai" name. Now, if there was a "matai" elected or selected for the name Alalamua at the time that Elisala was Tuimanua that man would have jurisdiction over the properties of the Alalamua family and not Tuimanua-Elisala.

If there was no one elected to the name, there is no question in the minds of the Court but that Tuimanua-Elisala exercised the jurisdiction over their properties although he did not hold a "matai" name.

If there is any right to this land Toaga today through the name Tauvao or Sua Tauvao, whichever he may have been, it rests and vests in the name Alalamua and not in Tuimanua. Now that is absolutely according to Samoan

custom and everyone in this room knows that because land passes from "Matai" to "Matai", and authority over land is not passed because one held a political position. So it is conclusively proven that if Siupolu has any right to this land whatever it is derived from Alalamua and not from Tuimanua.

The Court wants this point to be clear in the minds of the Samoan people because the court well realizes the importance of this decision.

Did the first King of Manua, immediately he became King, take title to all the lands of Manua? He did not. He took with that political title just the land he had jurisdiction over as a "matai". He had the power and authority to direct the affairs of the people of Manua through the position that he held but he acquired no land.

The Plaintiffs by their testimony in this action seek to prove that this land descended from County Chief to County Chief, or, in other words, from Faatui to Faatui, and would have continued to have descended that way if it had not been for the injection of Tuimanua into the affairs and taking this property, but because the King of Manua desired possession of this piece of land and because he went around and sought to find out as to whether there were any objections to his possessing this piece of land, and because they dared not to object because of his position, he came into the possession of the land.

Bearing in mind all the time that this land had been in the possession of the Faatui of the Faalupega for generations and it was at a very recent date that the last Tuimanua went around and asked the people if they objected to his possession of this land. Has any testimony been given that shows that this land was purchased by Tuimanua? Only in a vague way there is the mention of mats having been passed. But the claim of the Defendant, Siupolu, by her testimony and the testimony of her witnesses, is based on

352

the relationship that she bears to Tuimanua and not on possession by ancestors of hers as a result of their relationship.

Now, what happened to take this land over to Tau? Or, was it ever taken over to Tau? That question is in the minds of the Court. The Court is compelled to say that title or possession to this land was not taken to Tau by Sua-Tauvao but that it rested with the Sua's and passed down from the Sua's to the other Faatui until the time of Tuimanua-Elisala, and that he acquired possession of this land because of a political position that he held and not because of any right through relationship.

When the Court says "Because of the name he held" it means because of the fact that he was Tuimanua and that the people did not dare disregard his wish, though he had no right to this land because of relationship; nor do any of his descendants have any right to this land because of relationship.

It is the judgment of the Court that this land logically having passed from Faatui to Faatui would have continued to have passed from Faatui to Faatui, or County Chief, as he is known today, if something very unusual had not occurred in connection with the matter and that unusual thing that occurred was the desire of possession on the part of a person who occupied a powerful political position.

Furthermore, it must not be forgotten that Tuimanua-Elisala never held a "matai" name.

Another feature to this case which the Court in closing and before it renders the words of judgment must bring before the people of American Samoa is the fact that land cannot pass from a Samoan person to a person who has become a non-native except by trust deed issuing on the part of a parent or grand-parent.

In connection with the boundaries of the land "Toaga" the court desires to state the following:—

The Eastern or so-called Olosega boundary of the original land "Toaga" was an imaginary line running north from a rock known as "Lamaga" to the top of the mountain.

In describing the land known as Toaga today, the land which Siupolu sought to register the court will travel in a westerly direction, naming the various sections of land.

Traveling westward the first tract of land contained in the original land Toaga, is Muliuli, which has been in the possession of the family of Tuiolosega. The Western boundary of the land Muliuli, which has been designated by a marker, is the easterly boundary of the land known as Toaga today.

Within this land known as Toaga traveling westerly is a piece of land known as Sunuitao.

The third tract of land in the original tract known as Toaga forms the second tract of land in that now known as Toaga and is known as "Vaaui".

These two tracts of land "Sunuitao and Vaaui" are the two tracts of land that make up the land known as Toaga today, and the boundaries are established by markers.

These two piece[s] of land are the pieces involved in this action, as this is the land involved in the survey as presented by Siupolu to the Registrar of Titles for registration.

Opinion closed.

JUDGMENT

This cause coming on to be heard before the High Court of American Samoa and the testimony of both parties in the action having been carefully considered, it is ordered, adjudged, and decreed, that title in this land Toaga shall

vest in the family of Misa, of the Island of Ofu, and that the authority and jurisdiction over this land shall be exercised by the "matai", Misa. That those members of the Misa family who are occupying properties within this land Toaga, and by Toaga the Court means the lands Sunuitao and Vaaui, shall remain in undisturbed occupation of this land. That prior rights shall be exercised by members of the Misa family as designated by Misa, meaning that prior rights to lands that are unoccupied within the land known as Toaga today shall be exercised by a member of the Misa family under the jurisdiction of Misa. If there are people using products of the land known today as Toaga, as just described by the court, who are not members of the Misa family, and Misa himself does not object to the use of the lands, they may use the lands until Misa objects or some member of the Misa family objects.

It is further ordered, adjudged and decreed that the costs of this action shall be $100.00, which shall be assessed in amounts of $50.00 each, against Siupolu, the Defendant and the Misa family.

Given under our hands and seal of the High Court of American Samoa this 13th day of December, 1922.